**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 10 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEPHINE KING,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 04-7020
(D.C. No. CV-03-129-WH)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **McCONNELL** , **HOLLOWAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Stephine L. King appeals from an order of the district court affirming the Commissioner's decision denying her application for Supplemental Security Income benefits. Ms. King alleged disability based on depression, carpal tunnel syndrome, fascia rotator cuff repair, and knee surgery. The agency denied her applications initially and upon reconsideration.

After a remand from the Appeals Council and a second hearing before an administrative law judge (ALJ), the ALJ determined that Ms. King retained the residual functional capacity (RFC) to perform a significant range of sedentary work and that she could perform a significant number of jobs in the national economy. The ALJ therefore denied benefits for appellant, concluding that she was not disabled at step five of the familiar sequential analysis. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (explaining five-step sequential process for evaluating claims for disability benefits). The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996). On appeal, Ms. King contends that the ALJ erred by failing to properly consider the opinions of four of her treating physicians and by failing to

provide specific, legitimate reasons for discounting those opinions. [1] She assigns

further error to the ALJ's assessment of her RFC, contending that his

determination that she could do a significant range of sedentary work was not

supported by substantial evidence. Because we conclude the ALJ did not follow

the correct legal standards in considering the opinions of Ms. King's treating

physicians, we reverse and remand for further proceedings. We do not reach the

remaining issue raised by Ms. King because it may be affected by the ALJ's

treatment of this case on remand.

The Commissioner will generally give more weight to the opinion of a

treating source than to the opinion of a non-treating source. *Langley v. Barnhart*,

373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see*

*also* 20 C.F.R. § 416.927(d)(2). The first step in the process of evaluating the

opinion of a treating source is to determine whether the opinion is entitled to

"controlling weight." *Id.* The analysis is sequential. An ALJ must first consider

whether the opinion is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at *2

(quotations omitted).

---

[1] Ms. King includes Dr. Black as one of the treating physicians whose opinion was rejected by the ALJ. Because she does not advance any argument regarding the ALJ's treatment of Dr. Black's opinion other than to note that it was rejected, we will not analyze the ALJ's treatment of his opinion in this case.

If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Even if a treating source's opinion is not accorded controlling weight, however, such an opinion is still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 416.927. *Id.* Those factors are:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley,* 373 F.3d at 1119 (quoting 20 C.F.R. § 416.927).

After performing this analysis, the ALJ must announce good reasons for the weight assigned to the opinion of a treating physician. *Id.* Such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. Of course, an ALJ is permitted to

-4-

reject entirely the opinion of a treating physician; if he does so, however, he must provide specific, legitimate reasons for that rejection. *Watkins*, 350 F.3d at 1301.

### Opinions of Dr. Ashley and Dr. Cooper

In considering the opinions of Ms. King's treating physicians, the ALJ lumped the opinions of Dr. Ashley and Dr. Cooper together. Since the two physicians treated Ms. King for entirely different conditions, we do not find this approach helpful, and we will discuss the two opinions separately where appropriate.

Dr. Ashley began treating Ms. King for her mental impairments in October 1998 when she presented with a prior diagnosis of bipolar disorder from a Dr. Browning. Dr. Ashley diagnosed her with depression and carpal tunnel. Aplt. App. at 348. He discontinued her prescription for Paxil and, instead, prescribed Prozac for her depression. *Id.* Dr. Ashley reiterated his earlier diagnosis of depression when he saw Ms. King in November 1998, *id.* at 345, and again in January 1999, *id.* at 342. In completing a mental Medical Source Statement in September 1999, Dr. Ashley concluded that Ms. King had bipolar disorder, had not responded to treatment, and was severely depressed. *Id.* at 471. Additionally, Dr. Ashley noted that Ms. King had marked impairment in ability to remember locations and work-like procedures; to understand, remember, and carry out very short and simple instructions or very detailed instructions; to maintain attention

-5-

and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She further had marked impairments in the ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. *Id.* at 470-71.

Ms. King further exhibited moderate impairment in ability to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to interact appropriately with the general public; and to ask simple questions or request assistance. She was also moderately impaired in her ability to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. *Id.* In February and August 2000, Dr. Ashley again diagnosed depression and bipolar disorder. *Id.* at 496, 535.

Dr. Cooper was the treating physician who dealt with Ms. King's physical impairments. He diagnosed her as suffering from chronic pain, arthritis, degenerative joint disease, hypertension, hearing loss, and shoulder impingement. Aplt. App. at 474-75, 477. He also diagnosed her with depression. *Id.* at 477. Dr. Cooper's physical Medical Source Statement summarizes Ms. King to be

> limited to frequently lifting and/or carrying five to ten pounds; occasionally lifting and/or carrying ten pounds; standing and/or walking about two hours in an eight-hour workday, continuously for ten to fifteen minutes; sitting about two hours in an eight-hour work day, continuously for one hour. King's symptoms require her to lie down to manage pain. King is limited in her ability to push and pull and cannot exceed ten pounds of force. King may never climb, stoop, kneel, crouch, or crawl. King may occasionally balance. King is limited in her ability to reach, handle, finger, and feel. She is unlimited in her ability to see and speak. Environmental restrictions include machinery, temperature extremes, fumes, and vibration. King has limitations of neck, shoulders, wrist, and hips. Patient has chronic pain from degenerative disc disease, shoulder impingement, and bilateral carpal tunnel syndrome.

*Id.* at 472-73. Both Dr. Ashley and Dr. Cooper were of the opinion that Ms. King could not work. Dr. Ashley cited her severe depression and Dr. Cooper her other "multiple complicated medical problems." *Id*. at 479.

In refusing to give the opinions of either Dr. Ashley or Dr. Cooper controlling weight, the ALJ stated:

> It would appear that these functional limitations are based on the claimant's subjective complaints and are more an act of courtesy to a

patient of long-standing, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies.

Aplt. Br., tab 1, at 6.

After reviewing the activities Ms. King admitted to being able to engage in, the ALJ reported himself "not overly moved" by the opinions of the treating physicians and concluded that "the assessments of Drs. Cooper and Ashley are unsupported by, and that it is [sic] inconsistent with, the credible evidence of record, and I decline to give them controlling weight." *Id.*

Neither the ALJ nor the district court had the advantage of our recent opinion in *Langley* when considering this case. In *Langley*, we made it clear that it is incumbent upon an ALJ who refuses to assign controlling weight to the opinion of a treating physician to go further and determine what weight, if any, such an opinion is to be accorded. *Langley*, 373 F.3d at 1120, 1123. Just as the ALJ did in *Langley*, the ALJ here refused to give the opinions of Dr. Ashley and Dr. Cooper controlling weight. He then failed, however, to discuss what lesser weight should be given those opinions in light of the relevant factors set out in 20 C.F.R. § 416.927(d)(2). This is error requiring remand for further explanation by the ALJ.

The ALJ further erred by rejecting the opinions of Dr. Ashley and Dr. Cooper as inconsistent with the credible evidence of record without identifying

what that *inconsistent* record evidence is. The ALJ simply pointed to evidence regarding Ms. King's daily activities as the basis upon which to reject these two opinions. We do not view that evidence, however, as inconsistent–particularly with the significant mental impairments established in the record.

The ALJ cited evidence that Ms. King did housework, and laundry, cooked, fished, and shopped (albeit with family members), took care of her personal needs, created art, studied and received a GED [2], watched television, made her bed, read and visited family. We are unable to conclude, however, that these activities represent substantial evidence inconsistent with the impairments and limitations identified by both Dr. Ashley and Dr. Cooper. Ms. King could well be able to engage in these kinds of tasks and still have the marked to moderate impairments identified in the mental Medical Source Statements of Dr. Ashley and Dr. May and the limitations noted in the physical Medical Source Statement of Dr. Cooper.

Again, as in *Langley*, "[b]ecause the ALJ failed to explain or identify what the claimed inconsistencies were between [the opinions of Dr. Ashley and Dr. Cooper] and the other substantial evidence in the record, his reasons for rejecting [those] opinions are not 'sufficiently specific' to enable this court to

---

[2]    We note that Ms. King finally earned a GED after studying for four years, Aplt. App. at 367, and after failing the exam at least four previous times, *id.* at 405.

meaningfully review his findings." *Langley*, 373 F.3d at 1123 (quoting *Watkins*, 350 F.3d at 1300).

Finally, the ALJ erred in concluding that the opinions of Dr. Ashley and Dr. Cooper were based only on Ms. King's subjective complaints and were "act[s] of courtesy to a patient of long-standing, rather than a genuine medical assessment of discrete functional limitations based upon clinically established pathologies." Aplt. Br., tab 1, at 6. This statement is virtually identical to the boilerplate language this court condemned in *Langley.* As in *Langley*, there is no evidentiary basis here for either of these findings. There is nothing to indicate that Dr. Ashley or Dr. Cooper relied solely on subjective complaints or that their opinions were produced merely as an act of courtesy to Ms. King.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." *Id.* at 1253 (citing *Frey v. Bowen*, 816 F.2d 508, 525 (10th Cir. 1987)).

-10-

Thus, the ALJ did not follow the correct legal standards in considering the opinions of Dr. Ashley and Dr. Cooper, nor are the ALJ's reasons for completely rejecting those opinions supported by substantial evidence.

<u>Opinion of Dr. May</u>

Dr. May diagnosed Ms. King with unspecified psychosis, major recurrent depression, and a history of anxiety. Aplt. App. at 608. In his mental Medical Source Statement, Dr. May reached conclusions substantially similar to those of Dr. Ashley regarding Ms. King's marked impairments. He indicated that Ms. King had marked impairment in her ability to understand, remember and carry out detailed instructions; to maintain attention and concentration for extended periods of time; to perform activities within a schedule, and to maintain regular attendance, and be punctual within customary tolerances. She further exhibited marked impairment in the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Her ability to interact appropriately with the general public, to respond appropriately to changes in work setting, and to travel in unfamiliar places or use public transportation was also markedly impaired. *Id.* at 606-07.

-11-

In rejecting Dr. May's opinion the ALJ stated:

> I find that Dr. May's assessment is deficient, without supportive medical documentation. His only written comments were that the claimant was functionally limited, but he did not describe a medically determinable impairment that could reasonably cause such limitations. He provided no clinical signs in support of his conclusions. He did not refer to reports of individual providers, hospitals, or clinics, and he did not indicate on what basis, if any, his treatment of the claimant would support his conclusions. His assessment is clearly based on the claimant's subjective complaints, which I do not find to be fully credible.

Aplt. Br., tab 1, at 7.

This conclusion is unsupported by substantial evidence. Initially, there is abundant supportive medical documentation in the record from other treating sources that is consistent with Dr. May's opinion. [3] The ALJ also apparently overlooked a medical exam form in which Dr. May diagnosed Ms. King with unspecified psychosis, major recurrent depression, and a history of anxiety. Aplt. App. at 608. He recommended medications to control her psychosis and her moods. *Id.* We view those conditions as medically determinable impairments that could reasonably cause the limitations identified by Dr. May in his mental Medical

---

[3]    In addition to the notes and opinions from Dr. Ashley, other evidence in the record indicates that Ms. King was treated as an inpatient for bipolar disorder in October 1995. Aplt. App. at 339. She was treated twice in 1999 on an outpatient basis for treatment of depression. *Id.* at 340. She was repeatedly diagnosed as suffering from bipolar disorder. *Id.* at 358, 359, 367, 430. In 1997, after she moved from Ada, Oklahoma, to Lake Texoma, a new doctor diagnosed Ms. King with bipolar disorder and depression. *Id.* at 468.

Source Statement. Further, as a treating physician, Dr. May had the opportunity to observe Ms. King and her various signs and symptoms. As we have recently reiterated, "'a psychological opinion may rest either on observed signs and symptoms or on psychological tests.'" *Langley*, 373 F.3d at 1122 (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)). As such, Dr. May's observations about Ms. King's functional limitations constitute specific medical findings. *Id.*

A second error occurred when the ALJ failed to discuss what lesser weight, if any, should be given Dr. May's opinion pursuant to 20 C.F.R. § 416.927(d)(2). As with the treatment of the opinions of Dr. Ashley and Dr. Cooper, the ALJ must provide a further explanation for our review.

Finally, the ALJ's comment that Dr. May's assessment is based on Ms. King's subjective complaints is unsupported by substantial evidence. Again as with Dr. Ashley and Dr. Cooper, there is no evidence that Dr. May relied solely on Ms. King's subjective complaints. As for the ALJ's finding that those complaints are not totally credible, we note that this statement is contradicted by his later conclusion that Ms. King is "generally credible in her testimony concerning her mental impairments." Aplt. Br., tab 1, at 9.

In summary, the ALJ erred when, after refusing to give the opinions of three of Ms. King's treating physicians controlling weight, he failed to articulate what

-13-

weight, if any, he gave to those opinions. We cannot simply presume the ALJ applied the correct legal standards in considering those opinions. *See Watkins*, 350 F.3d at 1301. We must remand because we cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physicians' opinions. *See, e.g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

The judgment of the district court is REVERSED, and this cause REMANDED with instructions to remand to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

-14-