**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN L. VAKAS, M.D.,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee.

No. 04-3161
(D.C. No. 03-CV-1149-WEB)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Judge, **HENRY** , and **O'BRIEN** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Plaintiff-appellant John L. Vakas appeals from an order of the district court

affirming the Social Security Commissioner's decision denying his application for

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

disability insurance benefits under the Social Security Act.  We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291.  We affirm.

## I.

Plaintiff claims that he has been unable to work since December 2, 1986 due to degenerative disc disease of the cervical spine and other problems with his cervical spine.  It is undisputed that plaintiff was last insured for disability insurance benefits on December 31, 1991.  Consequently, "to obtain disability insurance benefits, plaintiff [must] establish that he became disabled on or before that date."[1]  *Washington v. Shalala*, 37 F.3d 1437, 1440 n.2 (10th Cir. 1994).

Plaintiff's application for benefits was denied initially and on reconsideration, and de novo hearings were held in April and November 2002 before an administrative law judge (ALJ).  Subsequently, in a decision dated December 11, 2002, the ALJ denied plaintiff's application for benefits at step five of the five-step sequential evaluation process for determining disability.  *See* 20 C.F.R. § 404.1520.  The ALJ concluded that plaintiff was not disabled on or

---

[1]  The administrative record indicates that plaintiff has also been diagnosed as suffering from diabetes and depression.  The administrative law judge found that plaintiff's diabetes and depression were not severe impairments on or before December 31, 1991.   *See* R., Supp. Vol. I at 21-22.  Plaintiff is not appealing the administrative law judge's ruling regarding his diabetes and depression.  In addition, although the record indicates that plaintiff has suffered from coronary artery disease and kidney failure in recent years, those conditions did not develop until after December 31, 1991.  Thus, they are not relevant to this appeal.

before December 31, 1991 because: (1) while the problems with his cervical spine were severe impairments which prevented him from performing his past relevant work as a medical doctor, he retained the residual functional capacity (RFC) to perform a significant range of sedentary and light work; and (2) based on the testimony of the vocational expert, he was capable of performing other jobs that existed in significant numbers in the national economy.

In March 2003, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In March 2004, the district court entered a comprehensive and well-reasoned order affirming the denial of plaintiff's application for disability insurance benefits. This appeal followed.

In its order, the district court set forth a detailed summary of plaintiff's medical history prior to 1992. *See* Aplt. App. at A17-A23. Because the district court has accurately summarized plaintiff's medical history, we do not need to repeat it here.

**II.**

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, we "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Doyal*, 331 F.3d at 760.

In this appeal, plaintiff claims that the ALJ committed reversible error by: (1) failing to give controlling weight to the opinions of his treating physicians; (2) failing to properly assess his credibility; and (3) failing to properly determine his RFC. Having carefully reviewed the administrative record and the pertinent legal authorities, we conclude that plaintiff's arguments are without merit.

**1. Treating Physicians' Opinions.**

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both:

-4-

(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* (quotation omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (quotations omitted).

We conclude that the district court correctly determined that "the ALJ did not err in refusing to give controlling weight or otherwise credit the opinions of

plaintiff's treating physicians that he was 'disabled,' because those opinions were not well-supported by clinical evidence and there is substantial evidence in the record to contradict them." Aplt. App. at A23. Specifically, we agree with the following analysis of the district court:

> Plaintiff's [treating physician] argument relies almost exclusively on the fact that his physicians completed statements certifying that he was disabled. . . . As an initial matter, the ALJ correctly observed that the forms completed prior to 1992 (with one exception) appear to have certified only that plaintiff was unable to perform his former occupation. . . . The ALJ in fact credited those opinions by finding that plaintiff was no longer able to work as a physician. To qualify for social security disability benefits, however, a plaintiff also has to prove that he was unable to engage in *any* substantial gainful activity. The cryptic disability forms completed by plaintiff's physicians fail to provide such evidence. They consist almost entirely of conclusory statements (or check marks) that plaintiff was "disabled." *Cf. Knipe v. Heckler*, 755 [F.2d] 141, 145 (10th Cir. 1985) (evidence is not substantial if it [is] merely conclusory"); *Castellano [v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)] ("A treating physician's opinion may be rejected if his conclusions are not supported by specific findings"). Absent are supporting test results or specific findings showing or stating the actual restrictions, limitations, or residual abilities that plaintiff had during this period. Plaintiff cites no such restrictions in his physicians' findings to indicate that his degenerative disc disease and stenosis would have precluded him from performing sedentary or light work prior to 1992. . . . Nor does he show that the findings of his treating physicians are inconsistent in any particular respect with the RFC as determined by the ALJ . . . .

*Id.* at A23-A24. Accordingly, like the district court, we reject "plaintiff's argument that the ALJ erred by declining to give controlling weight to [the] opinions [of his treating physicians]." *Id.* at A24.

## 2. Plaintiff's Credibility.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *McGoffin v. Barnhart,* 288 F.3d 1248, 1254 (10th Cir. 2002) (quotation omitted). Nonetheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quotation omitted).

We agree with the district court that "[t]he ALJ complied with these standards in the instant case." Aplt. App. at A25. As explained by the district court,

> [The ALJ] cited and applied the regulation governing evaluation of symptoms, including pain. *See* 20 C.F.R. § 404.1529. He noted the absence of objective medical evidence to support plaintiff's testimony that he was unable to do any work or perform even routine daily tasks prior to expiration of his insured status, and he linked his findings to specific evidence in the record. For example, he noted that although plaintiff testified he was unable to walk or do postural activities prior to his last insured date, there was evidence that as recently as 2000 plaintiff was able to go on long walks for exercise three times per week. Plaintiff also testified that he could not grip or write, but the ALJ noted there was evidence that he was able to read extensively, he was able to take post-graduate courses by correspondence in 1993, and he engaged in non-paying administrative work in 1997. Additionally, as the ALJ noted, plaintiff's testimony was undercut by medical evidence such as Dr. Hered's findings of "no clear cut anatomical weakness," and Dr. Drazek's records from 1990 reflecting the substantial improvement plaintiff made after physical therapy, including reduced pain, improved cervical range of motion, improved grip strength, and complete resolution of paresthesia in his upper extremities. Dr.

Drazek noted in October of 1990 that plaintiff was contemplating a return to part-time work, and in December she discharged him from her care, finding that a continuation of his therapy program was not warranted. As the ALJ noted, "no doctor has ever validated the rather severe limitations in standing, walking, sitting, lifting and carrying which [plaintiff] alleged at the hearing." R. 23.

*Id.* at A25-A26.

Because the ALJ's credibility determination "is affirmatively linked to substantial evidence and not just a conclusion in the guise of findings," *McGoffin,* 288 F.3d at 1254, there is no reversible error here. [2]

## 3. RFC Determination.

In his opening brief, plaintiff asserts that "[w]hen proper weight is given to the reports of Dr. Vakas' treating physicians and his credibility regarding his limitations due to pain, the conclusions to be drawn from the [vocational expert's] testimony will be different than those previous[ly] found by the ALJ." Aplt. Br.

---

[2] While we are not permitted to rely on extra-record facts and will not do so here, we nonetheless feel obliged to disclose to the parties that we have also discovered extra-record facts that would appear to raise additional concerns regarding plaintiff's credibility. First, "[i]n 1985, the [Kansas State Board of Healing Arts] issued an emergency order prohibiting [John L. Vakas, M.D.] from selling, dispensing, administering, or prescribing controlled substances." *Vakas v. Kansas State Bd. of Healing Arts*, 941 P.2d 381, 383 (Kan. Ct. App. 1997). Second, "[i]n 1988, the Board revoked [Dr. Vakas'] license to practice medicine and surgery." *Id.* In addition, while Dr. Vakas has applied on two separate occasions to have his license to practice medicine reinstated, both applications were denied. *Id.* Given this background, unless there are two individuals in the State of Kansas named "John L. Vakas, M.D," it would appear that plaintiff has not been entirely candid regarding the reasons why he has not practiced medicine since the late 1980s.

at 23. Having rejected plaintiff's claims that the ALJ erred by failing to properly evaluate the opinions of his treating physicians and his credibility, we conclude that this argument must likewise fail.

The judgment of the district court is AFFIRMED.

Entered for the Court

Per Curiam