**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLES E. KNIGHT,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

      Defendant-Appellee.

No. 09-1534
(D.C. No. 1:08-CV-02498-CMA)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HARTZ**, and **O'BRIEN**, Circuit Judges.

---

Plaintiff-appellant Charles E. Knight appeals from an order of the district

court affirming the Commissioner's decision denying his application for

Supplemental Security Income benefits (SSI). Knight filed for these benefits in

June 2005. He alleged disability based on skin disease, depression,

comprehension problems, breathing problems, and asthma. The agency denied his

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

application and he proceeded directly to the administrative hearing stage, pursuant to the agency's expedited procedure. *See* 20 C.F.R. § 416.1406(b)(4).

On October 22, 2007, Knight received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that he retained the residual functional capacity (RFC) to perform the full range of medium work, limited to occasional climbing of a ladder, rope, or scaffolds and frequent climbing of a ramp or stairs, balancing, kneeling, crouching or crawling. The ALJ further determined that Knight "should avoid concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dust, gases . . . poor ventilation . . . unprotected heights and hazardous machinery." Aplt. App., Vol. II at 17. He could "understand, remember and carry out simple instructions, respond appropriately to supervision, coworkers, and usual work situations, deal with changes in a routine work setting, and sustain the pace and concentration required in an ordinary work setting on a reasonably sustained basis." *Id.* Given these limitations, the ALJ found that Knight could not return to his past relevant work as a construction laborer, but that there were a significant number of other jobs which he could perform in the national or regional economy, such as grocery store bagger.

The ALJ concluded that Knight was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the

correct legal standards were applied. *Andrade v. Sec'y of Health & Human Servs.*,

985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989) (internal quotation marks

omitted).

The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d

748, 750-52 (10th Cir. 1988) (describing process). The claimant bears the burden

of establishing a prima facie case of disability at steps one through four. *See id.*

at 751 n.2. If the claimant successfully meets this burden, the burden of proof

shifts to the Commissioner at step five to show that the claimant retains a

sufficient RFC to perform work in the national economy, given his age, education

and work experience. *See id.* at 751.

On appeal, Knight raises three issues concerning the Commissioner's

evaluation of the effect of his mental impairments on his ability to work:

> Whether the ALJ's step two finding is legally erroneous and not
> supported by substantial evidence where he did not evaluate whether
> Knight's personality disorder was a severe impairment.
>
> Whether the ALJ's [RFC] finding is legally erroneous and not
> supported by substantial evidence when it did not account for
> limitations caused by Knight's OCD [(obsessive-compulsive

disorder)] and personality disorders, and whether limitations from
these impairments were not precisely included in the hypothetical
question.

Whether the ALJ properly considered the opinions of Dr. Campbell,
a treating physician, and Mr. Estep, a treating counselor.

Aplt. Opening Br. at 2. As the third of these claimed errors plainly requires

reversal, we discuss it first.

## 1. Evaluation of Treating Source Opinions

Knight's treating physician, Dr. Karen Campbell, expressed a number of

medical opinions concerning the severity of his depression over a period of years.

On February 1, 2000, she stated that his depression was "severe," and "in need of

medication." Aplt. App., Vol. II at 281. This opinion was supported by a clinical

test for depression known as the "Zung Scale," which on January 25, 2000,

showed "moderate to severe depression." *Id.* at 288. Dr. Campbell prescribed

Prozac for Knight. When that did not alleviate his symptoms, she added a trial of

BuSpar. *Id.* at 273-74. Over the next two years, she gradually increased his

Prozac from 20 mg. to 80 mg.

By July 10, 2001, a test called the Carroll Rating Scale showed that his

depression was still "severe." *Id.* at 261. Dr. Campbell opined that he probably

had "major depression." *Id.* On November 13, 2001, Knight stated that his

depression was doing "OK" but he was having some suicidal ideation. *Id.* at 259.

On June 24, 2002, Dr. Campbell characterized his depression as

"major/disabling." *Id.* at 254. On a number of subsequent occasions in 2006 and 2007, Dr. Campbell expressed the opinion that Knight's depression was "not well controlled" or "uncontrolled," even with the medication he was taking. *Id.* at 220, 228, 232.

The ALJ found that Knight had dysthymia, a less severe but chronic form of depression. *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 379 (4th ed., text revision 2000) (DSM-IV); *McGoffin v. Barnhart*, 288 F.3d 1248, 1250 n.1 (10th Cir. 2002). In reaching this conclusion, he said nothing about Dr. Campbell's diagnoses and opinions regarding the severity of Knight's depression. In fact, he never mentioned Dr. Campbell in his decision at all.

The Commissioner attempts to defend the ALJ's approach in three ways. First, he cites a number of cryptic references to Dr. Campbell's medical records in the ALJ's decision. He contends the ALJ "explicitly referred to [Dr. Campbell's] medical records at Exhibit 2 when discussing the medical evidence of record." Aplee Br. at 28. But these references simply refer to Knight having been treated for a variety of conditions including depression and do not present an evaluation of Dr. Campbell's medical opinions. Aplt. App., Vol. II at 19-20. The Commissioner also asserts that "[t]he ALJ duly noted Dr. Campbell's treatment of Knight's depressive symptoms with medication since 2000, and pointed out evidence from her medical records of Knight's noncompliance with treatment."

Aplee Br. at 28-29.  Again, however, nothing ties the ALJ's cryptic references to Knight's treatment and alleged noncompliance to any opinion expressed by Dr. Campbell.

Second, the Commissioner correctly notes that "an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  That principle is not controlling here, however.  Rather, as this court has noted, an ALJ's notice of determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks omitted).

To meet this requirement, an ALJ is required to conduct a multi-step analysis of treating source opinions.  In conducting his analysis, the ALJ must first decide whether a treating source's opinion is entitled to controlling weight. To make this determination, he "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* (internal quotation marks omitted).  If so, he must also confirm that it is consistent with other substantial evidence in the record.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  *Id.*

Even if the ALJ determines that the treating source's opinion is not entitled

to "controlling weight," the opinion is still entitled to deference and must be

weighed by using a list of pertinent factors described in the regulations. *See id.*

at 1300-01; 20 C.F.R. § 416.927(d)(2)-(6). "After considering the pertinent

factors, the ALJ must 'give good reasons in the notice of determination or

decision' for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d

at 1301 (quoting 20 C.F.R. § 404.1527(d)(2) (brackets omitted)). *See also*

20 C.F.R. § 416.927(d)(2). "Finally, if the ALJ rejects the opinion completely, he

must then give specific, legitimate reasons for doing so." *Id.* (internal quotation

marks omitted). The ALJ performed none of this analysis with regard to

Dr. Campbell's opinions about Knight's depression.

Finally, the Commissioner argues that the ALJ's failure to assess

Dr. Campbell's opinion that Knight's depression was "major/disabling" should be

excused

> "because final responsibility for determining the ultimate issue of
> disability is reserved to the [Commissioner]." *Castellano v. Sec'y
> of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see
> also* 20 C.F.R. § 416.927(e)(2) (the Commissioner "will not give any
> special significance" to a medical source opinion on issues reserved
> to the Commissioner); SSR 96-5p, 1996 WL 374183, at *2 ("treating
> source opinions on issues []reserved to the Commissioner are never
> entitled to controlling weight").

Aplee Br. at 30.

This argument is also unavailing. While the ALJ need not give controlling weight to a treating physician's opinion concerning the ultimate issue of disability, he must still provide an evaluation of the treating physician's opinion and state his reasons for either rejecting or accepting it. That is what the ALJ failed to do here. We must therefore reverse the district court's decision upholding his decision and remand for further proceedings.

Knight also challenges the ALJ's evaluation of the medical opinions of Chris Estep, a treating mental health counselor. The applicable analysis differs significantly from that required for Dr. Campbell's opinions. A mental health counselor is not an "acceptable medical source" under the Commissioner's regulations. *See* 20 C.F.R. § 416.913(a). Instead, he is classified as an "other source" whose evidence can be considered to show the severity of a claimant's impairment and how it affects his ability to work. *Id.* § 416.913(d). Opinion evidence from "other sources" is evaluated using the factors outlined in 20 C.F.R. § 416.927(d), as explained in further detail in Social Security Ruling 06-03p, 2006 WL 2329939 (Aug. 9, 2006). These factors include:

- How long the source has known and how frequently the source has seen the individual;

- How consistent the opinion is with other evidence;

- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

SSR 06-03p, 2006 WL 2329939, at *4-5.

Here, the ALJ expressly considered Mr. Estep's opinion concerning the severity of Knight's mental impairments but rejected it because Mr. Estep did not treat Knight and because the GAF rating of fifty-six Mr. Estep provided was internally inconsistent with the mental limitations he assigned to Knight. Knight contends these reasons are inadequate because Mr. Estep in fact began treating Knight in October 2007 and because a GAF score of fifty-six was not inconsistent with Mr. Estep's overall finding of serious limitations.

The ALJ's evaluation is not inadequate for the reasons Knight advances. At the time of the hearing, Knight had seen Mr. Estep only once, for an initial assessment that took place four days before the hearing. *See* Aplt. App., Vol. II at 295-309. While this initial consultation could be viewed as "treatment," the ALJ permissibly assigned little weight to Mr. Estep's opinions given his lack of treatment history with Knight.

The ALJ's evaluation of Mr. Estep's GAF score was also permissible. A GAF rating of fifty-six falls within the range of scores, fifty-one to sixty, that indicates moderate symptoms or moderate functional difficulties in an individual's level of functioning. *See* DSM-IV at 32-34. A score of fifty-six is

inconsistent with the extremely severe mental restrictions Mr. Estep described as part of his initial consultation record.

We note, however, that Knight submitted seven treatment records from Mr. Estep to the Appeals Council, covering his course of treatment following the hearing before the ALJ. The Appeals Council made these records part of the administrative record. While it stated that the records did not provide a basis for changing the ALJ's decision, it did not explain how it reached this conclusion. Given that these records have undermined the ALJ's principle reason for discounting Mr. Estep's conclusions about Knight's mental impairments (lack of treatment history) and given the further assessment of Knight's mental impairments that we have otherwise directed, the ALJ should give specific consideration to Mr. Estep's treatment records, utilizing the factors and analysis outlined above.

## 2. Personality Disorder as Severe Impairment

Knight also argues that the ALJ erred by failing to include an alleged personality disorder among the severe impairments he identified at step two of his analysis. The ALJ determined that Knight had other severe impairments (chronic obstructive pulmonary disease (COPD); eczema; dysthymia; OCD; and a history of alcohol abuse, not material), and so he proceeded to the next step in the sequential analysis. This was all he was required to do at step two. *See Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007).

-10-

Knight also argues, however, that the ALJ erred at a later stage of the analysis by failing to include the effect of his personality disorder in determining his RFC. "[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). The ALJ made no specific finding concerning whether Knight's alleged personality disorder, NOS, was a medically-determinable impairment or whether it had any effect on his ability to work. Given our reversal on other grounds, the ALJ should consider whether Knight has a personality disorder, NOS, and assess its effect, if any, on his ability to work, with appropriate findings.

### 3. RFC Limitations Due to OCD

Knight next contends that the ALJ erred by failing to include limitations for his OCD and alleged personality disorder in his RFC and in his hypothetical question to the vocational expert (VE). We have already disposed of the claim regarding his alleged personality disorder and will not discuss those allegations further here. As to Knight's OCD, he asserts that the ALJ failed to take account in either his RFC or his hypothetical question of Knight's need to wash his hands frequently, and the effect of this condition on his ability to work.

The ALJ found that Knight could "sustain the pace and concentration required in an ordinary work setting on a reasonably sustained basis." Aplt. App.,

Vol. II at 17. He did not include any restriction for frequent breaks or hand-washing in either his hypothetical to the VE or his RFC.

Dr. James noted Knight's frequent hand-washing (fifty times per day). Though he did not find that Knight had any other OCD symptoms, he diagnosed him with OCD.

At the hearing, Knight testified that he washed his hands at least 24 times per day. He washed them when he used the bathroom and when he helped his mother. *Id.* at 367.

On the Psychiatric Review Technique form he prepared, a state agency reviewing physician noted the existence of Knight's "OCD/handwashing," *id.* at 147, but concluded overall that he would have only "mild" "difficulties in maintaining social functioning" and "difficulties in maintaining concentration, persistence, or pace," *id.* at 152, and no "restriction on activities of daily living" or "episodes of decompensation," *id.*

Although Knight now claims he needs extensive breaks to engage in hand-washing, this purely speculative assertion finds no support in the medical record. No doctor has stated that his ability to work would be affected by his need for frequent hand-washing. Instead, his physicians have prescribed him topical ointments to reduce the redness and chapping of his hands, which has also been attributed (along with a rash and/or scaly or itchy skin elsewhere on his body) to his eczema. *See, e.g.,* Aplt. App. at 234, 277, 281, 284, 286-87.

Knight also claims that the ALJ should have imposed a restriction on "handling, fingering, carrying, and lifting objects due to dry, red and cracked hands." Aplt. Opening Br. at 32. But he points to no medical evidence that any doctor imposed such a restriction on his abilities due to skin problems associated with his hands. We conclude that the ALJ did not err by failing to impose additional restrictions on Knight's RFC due to his OCD.

The judgment of the district court is REVERSED and the case is REMANDED with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Deanell Reece Tacha
Circuit Judge