**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KATHY A. PECK,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant-Appellee,

No. 05-4090

(D.C. No. 04-CV-231-DAK)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, HOLLOWAY,** and **McCONNELL**, Circuit Judges.

Kathy Peck appeals from the district court's order affirming the

Commissioner of Social Security's determination that she is not entitled to

disability insurance benefits under Title II of the Social Security Act.

Specifically, Peck contends that the ALJ erred by: (1) failing to evaluate whether

she met the requirements for mental retardation under Listing 12.05(C), even

though the ALJ made all the necessary findings to conclude that she met the

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec.
1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

listing; and (2) not providing specific, legitimate reasons for rejecting her treating physician's opinion concerning her physical limitations. We exercise jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

I.

A.

On March 14, 2002, Peck filed an application for disability insurance benefits, claiming disability as of March 3, 2001, due to suspected multiple sclerosis, cervical disc disease with chronic neck pain, anxiety related disorders, heart problems, and borderline intellectual functioning.[1] The application was denied both initially and upon reconsideration. At Peck's request, an administrative law judge ("ALJ") held a hearing on June 3, 2003, at which Peck and her non-attorney representative were present. On July 23, 2003, the ALJ rendered a decision in which he determined that Peck was not under a "disability" as defined by the Social Security Act. Aplt. App. at 24. After the ALJ's unfavorable decision, Peck requested review by the Appeals Council. The Appeals Council denied Peck's request for review on January 12, 2004, rendering the ALJ's decision the final decision of the Commissioner of Social Security

---

[1] The administrative law judge's decision classified Peck's alleged impairments as multiple sclerosis, brain lesions, failed cervical fusion, bone spurs, panic attacks, anxiety attacks, and migraine headaches. Aplt. App. at 24.

("Commissioner"). Id. at 14. On March 8, 2005, the district court issued an order summarily concluding that the Commissioner's decision was supported by substantial evidence and free of legal error. Id. at 7-8. Peck filed a timely appeal on April 25, 2005. See Fed. R. App. P. 4(a)(1)(B).

B.

"The Secretary [of Health and Human Services] has established a five-step sequential evaluation process for determining whether a claimant is disabled." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. Those five steps are as follows:

(1) A person who is working is not disabled.

(2) A person who does not have an impairment or combination of impairments severe enough to limit the ability to do basic work activities is not disabled.

(3) A person whose impairment meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled.

(4) A person who is able to perform work she has done in the past is not disabled.

(5) A person whose impairment precludes performance of past work is disabled unless the [Commissioner] demonstrates that the person can perform other work. Factors to be considered are age, education, past work experience, and residual functional capacity.

Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988) (citing 20 C.F.R. § 416.920(a)-(f)) (citations omitted).

At step one, the ALJ concluded that Peck had not engaged in substantial gainful activity since her alleged onset date of disability, March 3, 2001. Aplt. App. at 31. At step two, the ALJ concluded that Peck suffered from the following severe impairments which significantly limited her ability to perform basic work activities: anxiety related disorders and status post cervical fusion with chronic neck pain. Id. at 25-31. The ALJ determined that Peck's alleged multiple sclerosis and heart problems could not be considered severe impairments. Id. at 25. At step three, the ALJ concluded that Peck's severe impairments were not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments. Id. At step four, the ALJ concluded that, based on Peck's residual functional capacity (RFC) to perform unskilled, sedentary work, Peck was unable to perform her past relevant work. Id. at 32. Finally, at step five, the ALJ concluded that other jobs existed in significant numbers that Peck could perform based on her medically determinable impairments, functional limitations, age, education, and work experience. Id. at 31-32. As a result, the ALJ concluded that Peck was not "disabled" within the meaning of the Social Security Act. Id. at 32.

II.

A.

"The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence, and whether

she applied the correct legal standards." Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Our review entails a thorough examination of the record to ensure that the substantiality test has been met, but we may "'neither reweigh the evidence nor substitute our judgment for that of the agency.'" Id. at 1262; White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2002) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).

B.

On appeal, Peck contends that we should order immediate payment of benefits because she meets the requirements for mental retardation under Listing 12.05(C). Specifically, Peck argues that, although the ALJ made the necessary findings to conclude that she met Listing 12.05(C), the ALJ failed "to make the obvious conclusion" that she met Listing 12.05(C), or for that matter, to even "mention" the listing in the decision. Aplt. Br. at 8, 10.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) (citation and internal quotation marks omitted). Peck has the "step three burden to present evidence establishing

-5-

her impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, Peck must establish that her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

> The listing for mental retardation, Listing 12.05, provides in relevant part:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C); see Brown v. Sec'y of Health and Human Servs., 948 F.2d 268, 270 (6th Cir. 1991) ("The Secretary, in promulgating Listing 12.05(C), expressly singled out individuals with Mild Mental Retardation for special treatment in determining entitlements to disability benefits.").

We have held, as have other circuit courts, that a claimant's burden under Listing 12.05(C) is twofold: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70"; and (2) "a physical or other mental impairment imposing

-6-

additional and significant work-related limitation of function." See, e.g., Hinkle v. Apfel, 132 F.3d 1349, 1351 (10th Cir. 1997); Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir.), reh'g en banc denied, 933 F.2d 1023 (11th Cir. 1991); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). Peck correctly argues that the ALJ made the necessary findings to meet these two requirements.

On May 24, 2002, Dr. David Ericksen performed a consultive evaluation on Peck, noting that Peck alleged "disability due to anxiety and cognitive dysfunction." Aplt. App. at 240-44. In particular, Dr. Ericksen administered the Wechsler Adult Intelligence Scale-III (WAIS-III). Dr. Erickson reported that, on the WAIS-III, Peck obtained a verbal IQ score of 71, a performance IQ of 74, and a full scale IQ score of 70. Id. at 242. The applicable regulations direct our attention to the lowest of the three scores: "In cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full-scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c). The ALJ's decision recognized Peck's full scale score of 70 under the WAIS-III. Aplt. App. at 29. Thus, Peck meets the valid IQ score requirement for Listing 12.05(C).

Listing 12.05(C) also requires that the claimant have a physical or other mental impairment imposing additional and significant work-related limitation of function. "[A] 'significant limitation' of function for purposes of § 12.05(C)[] is

-7-

one that has more than a slight or minimal effect on the claimant's ability to perform basic work." Hinkle, 132 F.3d at 1352 (citation omitted). The limitation "'need not be disabling in and of itself'" because this would render the requirement meaningless. Id. at 1352-53. In Hinkle, we held that this requirement "should 'closely parallel' the step two standard," i.e., "whether the claimant has an 'impairment or combination of impairments which significantly limits [her] . . . ability to do basic work activities.'" Id. (citations omitted). But we also noted that "a claimant's inability to perform h[er] past relevant work [at step four] would meet" this standard. Id. at 1353 n.4.

The ALJ concluded at step two that Peck suffered from severe impairments which combined to significantly limit her ability to perform basic work related functions. Aplt. App. at 31. The ALJ determined that Peck had the following severe impairments: anxiety related disorders and status post cervical fusion with chronic neck pain. Id. at 25. Additionally, the ALJ concluded at step four that Peck was limited to sedentary, unskilled work, and, as a result, she was unable to perform her past relevant work. Id. at 30, 32. Based on the ALJ's findings, Peck meets the additional significant impairment requirement under Listing 12.05(C).

Even though the evidence supports Peck's argument that she meets or equals one of the impairments listed in the regulations – Listing 12.05(C) – the ALJ did not discuss this listing or his reasons for rejecting its applicability to Peck, beyond his statement that "[t]he exhibits and testimony do not establish that

a listing is met or equaled in this case."[2]  Id. at 31-32.  This sort of "bare conclusion is beyond meaningful judicial review," because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."  Clifton, 79 F.3d at 1009.  To determine whether substantial evidence supports the ALJ's decision, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  Id. at 1010.

The record here is devoid of any discussion as to why the ALJ considered the evidence of Peck's IQ and additional significant impairment insufficient to satisfy Listing 12.05(C).  Without more, we cannot review the basis of the ALJ's decision or determine whether substantial evidence supports it.

It is possible that the ALJ's error resulted from Peck's representative's apparent concession that Listing 12.05(C) did not apply to her case:

> And one other issue that may or may not be related to demyelinating [sic] process.  In the psychological evaluation . . . that was performed by Dr. David Erickson, there was some interesting results . . . .  She had a full-scale IQ score of 70.  Verbal IQ of 71.  Performance IQ of 74.  So again, *if there were other correlating information, then I would be*

_____

[2]  The only specific listings that the ALJ considered were Listings 1.04, 12.02, 12.04, and 12.06, but not 12.05(C).  Aplt. App. at 25-26.

*arguing listing 12.05 in terms of that 70–the decreased function, the intellectual difficulties. But from her own report, even though she dropped out of school in the tenth grade, she was doing okay in school up to that point. And in terms of–it's really arguing that there's mild mental retardation, there isn't necessarily direct evidence to support that diagnosis. However, that decreased IQ, is certainly an ongoing problem.* That report from Dr. Erickson also outlines the difficulties that she has been having with memory. He mentions throughout the report that she gave good effort. That she kept on trying even when parts of the testing seemed somewhat overwhelming, but the problems were quite evident in his summary. He goes through and mentions that results suggested intellectual functioning at the level of the bottom four percent of the population. So it was somewhat better memory and learning within the range of the bottom 20 percent. Mentions that the ability to understand, remember, and sustain concentration was moderately impaired.

Aplt. App. at 378-79 (emphasis added). As an initial matter, the representative's statement is not a clear-cut concession. The representative's statement comes close to admitting that Peck's impairments do not satisfy Listing 12.05(C), but does not actually go that far.

Even if the representative's comment is reasonably read as a concession, the Social Security Act still requires that the ALJ state the factual basis for concluding that a seemingly relevant listing does not apply:

*Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

See 42 U.S.C. § 405(b)(1) (emphases added). In this case, the ALJ made no findings specifically concerning Listing 12.05(C). As a consequence, we are left

-10-

to speculate why the ALJ concluded that Listing 12.05(C) did not apply, i.e whether the ALJ relied on the representative's apparent concession or independently concluded that the evidence did not warrant a finding of disability at step three. As this case is presently presented, we cannot determine whether the ALJ's "factual findings are supported by substantial evidence." Clifton, 79 F.3d at 1009.

In response, the Commissioner asks that we not remand the case, because there was no evidence that Peck met the capsule definition of mental retardation found in the opening paragraph of § 12.05, which requires that the claimant must have suffered "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The regulations explain that the introductory paragraph to Listing 12.05 (hereinafter "the capsule definition") imposed additional requirements, which the claimant must satisfy to meet his or her burden under Listing 12.05(C):

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(A) (emphasis added).

The Commissioner's argument ignores our ruling in Clifton where we held that we can only review ALJ decisions that make specific findings on the facts of

-11-

the case.  See 79 F.3d at 1009-10.  If Peck does not meet the capsule definition, then the ALJ must make that determination in the first instance.

In the alternative, the Commissioner argues that the ALJ's failure to make findings on Listing 12.05(C) is harmless error.  We have recognized that ALJ decisions may be subject to a harmless error analysis, allowing the court to affirm an ALJ's decision – despite an ALJ's error at step three – "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."  Fischer-Ross, 431 F.3d at 734.  Those findings must "conclusively preclude Claimant's qualification under the listings at step three" such that "'no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'"  Id. at 733-34, 735 (citations omitted).

The Commissioner points to various facts in the record concerning Peck's tenth grade education, vocational training, driver's license, role in the family as financial manager, and past jobs to show that Peck's deficits in adaptive functioning did not initially manifest during the developmental period.  While these facts may cut against a finding that Peck satisfied the capsule definition, they by no means conclusively resolve the question one way or the other.  Indeed, the best that the Commissioner can say is that the evidence "*does not indicate the presence of deficits in adaptive functioning before the age of 22* that would

support a presumptive finding of disabling mental retardation." Aple. Br. at 29-30.

The only portion of the ALJ's decision potentially touching on the timing of Peck's cognitive deficits is that there was "no evidence of an underlying, chronic disorder of at least 2 years' duration resulting in documented episodes of decompensation, medical history of functional limitations, or evidence of a highly supported living arrangement." Aplt. App. at 26. When making this finding, however, the ALJ was discussing organic mental disorders and affective disorders under Listings 12.02 and 12.04, thereby giving no confirmation to a conclusion either way on mental retardation, which is a separate mental impairment.

We therefore reverse and remand to the district court with direction to remand the case to the ALJ for further proceedings to determine whether Peck has an impairment that meets or equals Listing 12.05(C). Although Peck asks us to order an immediate payment of benefits because "the ALJ made all of the findings necessary to conclude that Ms. Peck's impairments meet the requirements of Listing 12.05(C)," we are hesitant to assume the role of fact-finder in the first instance. Here, the ALJ made no findings regarding Listing 12.05(C) and we must remand to afford the ALJ that opportunity. See Williams, 844 F.2d at 760.

C.

Peck also argues that the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Sundwall's opinion that she needs to lie down at least six hours

-13-

in an eight-hour workday, she requires an unscheduled break every twenty to thirty minutes, and she would miss more than four days of work per month. Peck maintains that Dr. Sundwall's conclusions are entirely supported by the record, and should have been included in the ALJ's RFC assessment.

The ALJ must give "controlling weight" to the treating physician's opinion, provided that opinion is "well supported by clinical and laboratory diagnostic techniques and . . . is not inconsistent with other substantial evidence in the record." Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994). An example of such an opinion concerns the "nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions." Id. (citation omitted).

"A treating physician's opinion may be rejected, but if it is rejected, the [ALJ] must give specific, legitimate reasons for his action." Reyes, 845 F.2d at 245 (citation omitted). An ALJ may not reject a treating physician's opinion based on "'his or her own credibility judgments, speculation, or lay opinion.'" McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)) (emphasis omitted). Further, if the ALJ decides that a treating source's opinion is not entitled to controlling weight, he must still determine the weight it should be given after considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the treating source's opinion is supported by objective evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether or not the treating source is a specialist in the area upon which an opinion is given; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

On March 17, 2003, Dr. Sundwall completed a questionnaire concerning Peck's impairments. Aplt. App. at 288-89. He diagnosed Peck with suspected, but unproven multiple sclerosis, cervical disc disease, and chronic pain in the arms, and legs. Id. at 288. Due to these impairments he opined that Peck suffered from the following limitations: unable to walk more than a block without severe pain; unable to sit for more than thirty minutes at one time; unable to stand for more than twenty minutes at one time; needs to recline or lie down for at least six hours in an eight hour work day; unable to sit more than two hours in an eight hour work day; unable to stand more than two hours in an eight hour work day; requires a job that permits shifting positions at will from sitting, standing, or walking; needs to take unscheduled breaks every twenty to thirty minutes in an eight hour workday; occasionally able to lift and carry ten pounds; and never able to lift or carry more than twenty pounds. Id. at 288-89. Dr. Sundwall further

-15-

opined that Peck was likely to be absent from work more than four times a month.
Id. at 289.

In determining Peck's RFC at step four, the ALJ listed the functional limitations reported by Dr. Sundwall, and then stated:

> In support of these restrictions, Dr. Sundwall attached Dr. Apfelbaum's letter, . . . and some brief office notes, mostly detailing the claimant's medications. He added that the claimant cannot sit or walk more than 2 hours in an 8-hour day, total, because her right leg is weak and she gets stiff and numb when sitting. He did not further explain how these symptoms mandated 6 or more hours a day of lying down or reclining. His office notes contained no indication that he conducted any tests. Finally, Dr. Apfelbaum's conclusions do not appear to justify these limitations, to the extent described by Dr. Sundwall. However, the undersigned does agree that the claimant has significant physical and mental limitations, i.e., severe impairments.

Id. at 29.

Peck correctly asserts that an ALJ must provide specific and legitimate reasons for rejecting the opinion of a treating physician. Here, the ALJ did not specifically identify how each limitation provided in Dr. Sundwall's opinion was inconsistent with other medical evidence in the record, but our case law does not require that degree of detail. See Clifton, 79 F.3d at 1009-10 (stating that while "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence"). In any event, the ALJ provided legitimate reasons for rejecting Dr. Sundwall's opinion. Dr. Sundwall's recommended physical limitations consist of checked boxes and circled numbers on a form. Cf. Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Dr.

-16-

Gabbert's report in this regard consists solely of boxes checked on the Secretary's form to indicate his conclusion of no limitation on right arm use. Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."). Dr. Sundwall's opinion was not supported with additional explanation, but referenced a letter from Dr. Apfelbaum, and Dr. Sundwall's patient notes.

The ALJ found that neither Dr. Apfelbaum's letter, nor Dr. Sundwall's patient notes justified the extent of Dr. Sundwall's recommended limitations. A treating physician's opinion should be accorded controlling weight, but only if it is well supported by medical findings. Absent from the record is medical evidence or opinions from doctors, treating or otherwise, to confirm the degree of limitations opined by Dr. Sundwall's form. The ALJ properly evaluated Dr. Sundwall's opinion in the context of the record of as a whole, and the ALJ's decision is supported by substantial evidence.

### III.

In sum, we reverse and remand to the district court with direction to remand the case to the ALJ for further proceedings to determine whether Peck has an impairment that meets or equals Listing 12.05(C). We affirm the ALJ's

rejection of Dr. Sundwall's report.

Entered for the Court


Mary Beck Briscoe
Circuit Judge
