FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 9, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

CHARLES F. COPP,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Respondent - Appellee.

No. 23-8019
(D.C. No. 2:22-CV-00046-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Charles F. Copp appeals from the district court's decision upholding the denial

of his application for disability insurance benefits.  Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

## I.  Background

Mr. Copp applied for benefits in April 2011, alleging disability based on physical

and mental impairments.  The ALJ's denial of his application was twice remanded—once

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

by the district court and once by the Social Security Administration Appeals Council—before the ALJ finally denied the application in a written decision in October 2019.  The Appeals Council denied Mr. Copp's request for review, thereby rendering the October 2019 decision the final agency decision for purposes of judicial review.

## A.  Medical Records and Other Evidence[1]

Mr. Copp alleges he was first diagnosed with bipolar disorder in 2004.  He has also been diagnosed with antisocial personality disorder, depression, ADHD, and polysubstance abuse.  For several years he received treatment from Southwest Counseling Service, where he frequently saw psychologist Kayleen Logan.

In May 2008, the month Mr. Copp alleges he became disabled, Ms. Logan reported Mr. Copp was on medications to help him sleep and stabilize his mood.  She noted that his mood and thought content were normal, and that his thought process was organized.  A few months later, Mr. Copp reported to Ms. Logan he was experiencing increased difficulty sleeping as well as racing thoughts, paranoia, depression, stress, and anger.  Ms. Logan prescribed an antipsychotic medication.

Later the same year, Mark Gibson, a Southwest psychologist, performed an evaluation in connection with Mr. Copp's disability claim.  Mr. Copp told Mr. Gibson he

---

[1] Mr. Copp alleges he became disabled as a result of back problems and mental impairments.  Because he does not challenge the ALJ's evaluation of his back problems, we focus only on the records relevant to his mental impairments.

had a long history of abusing marijuana, methamphetamines, and pain pills.[2]  Testing revealed Mr. Copp's memory was in the low average to borderline range.  Mr. Gibson concluded that "Mr. Copp has some obvious mental health issues that keep him from being able to function well in society."  Aplt. App. vol. 4 at 545.

Mr. Copp's bipolar symptoms improved throughout much of 2009, and he was observed to be calmer, less paranoid, and better at communicating.  During one of his 2009 visits, he told a counselor he was dependent on marijuana and spent $55 a month on drugs.  He also said he had been offered a management position at Taco Bell, but that he was "not really interested."  *Id.* at 593.  The counselor recorded that Mr. Copp showed "malingering traits . . . in which he is opposed to working, keeping a schedule and [is] more interest[ed] in illicit drug use."  *Id.*

In January 2010, Mr. Copp reported increased depression due to situational factors, such as the anniversary of his father's death.  Ms. Logan therefore modified his medications.  Later that summer, she again adjusted his medication after Mr. Copp again reported increased symptoms.  By September, Mr. Copp reported significant improvement, including better mood and concentration.  Treatment records throughout the rest of 2010, 2011, and early 2012 reflect that he generally showed organized thought processes and normal thought content, but often described situational depression.

---

[2] Shortly after Mr. Gibson's evaluation, another Southwest counselor noted that Mr. Copp had been arrested for marijuana possession and "may not be a reliable reporter" concerning drug and alcohol use.  Aplt. App. vol. 4 at 597.

In September 2013, Mr. Copp saw Leah Muthuri, M.D. He reported he had stopped taking his bipolar medication in 2011 and was only taking a sleeping aid. He complained of a rash, which Dr. Muthuri attributed to anxiety and bipolar disorder. She prescribed Xanax. The next month, Mr. Copp reported he was having difficulty staying focused on his job (although the record does not reflect what that job was). Dr. Muthuri diagnosed ADHD and prescribed an additional medication. Mr. Copp reported a few weeks later that he was more focused and "ready to take [on] the challenges of the day." *Id.* vol. 5 at 934. At all three visits, Dr. Muthuri reported Mr. Copp was cooperative with euthymic mood and normal speech and cognition.

Augusto Jamias, M.D., examined Mr. Copp in March 2014, concerning purported pain following surgery. Dr. Jamias suspected Mr. Copp's complaints were part of his "drug seeking behavior." *Id.* vol. 10 at 2081. Concerned about narcotics dependence, Dr. Jamias recommended Mr. Copp see a specialist. Consistent with that recommendation, Mr. Copp saw Elina Chernyak, D.O., in September 2014. He told her he had used marijuana and methamphetamine daily for twenty-three years, and that "[a]ddiction consequences are related to financial problems, legal issues and work." *Id.* at 2066. He declined in-patient detoxification. The next month Mr. Copp told Dr. Muthuri he had used illegal drugs in recent weeks and was unable to find work because he had marijuana in his system.

In April 2015, Mr. Copp was arrested after a domestic dispute and taken to a hospital for evaluation. He admitted to using street drugs but evaded a question about the date of his last use. He also told the evaluating physician he had been working as a teller

at a horse track.  The physician observed Mr. Copp had adequate concentration and intact memory.  The physician concluded Mr. Copp was not psychotic or manic and recommended he be transferred to the jail.

Mr. Copp served four months in jail, during which he was not given any medications and had no access to drugs or alcohol.  At the end of his jail time, he was transferred to a psychiatric hospital for eight days in order to be evaluated for his competency to stand trial.  David Carrington, M.D., examined Mr. Copp and determined his arrest was precipitated by drinking alcohol while taking a potent combination of Xanax, Ambien, Adderall, and Percocet.  Dr. Carrington observed Mr. Copp to be "entirely cooperative, logical, goal directed and behaviorally, emotionally and cognitively appropriate." *Id.* at 2219.  He further found that Mr. Copp "demonstrated no signs or symptoms of mental illness or of cognitive impairments," and that no psychotropic medications were indicated. *Id.*

Mr. Copp returned to work in September 2017 as a heavy equipment operator in an oil field.  That job lasted until June 2019.  A manager later explained that in the last month of Mr. Copp's employment, his attendance was "hit or miss." *Id.* vol. 9 at 2031.

## B. Consultant Opinions Concerning Mr. Copp's Disability Claim

Several medical consultants evaluated Mr. Copp's disability claim.  In September 2011, state agency psychology consultant E. Dean Schroeder concluded Mr. Copp had no more than moderate work-related limitations and therefore was not disabled.  A year later, another state agency consultant, Greg Rich, reviewed Mr. Copp's record and arrived at the same conclusion.

In September 2012, psychologist Mark Watt performed a consultative evaluation in connection with Mr. Copp's disability claim. Mr. Copp told Mr. Watt he had experimented with a variety of substances including methamphetamine, and that he had been charged with marijuana possession in 2007 and 2012. Mr. Watt observed that Mr. Copp's memory and ability to concentrate were in the low-average range. He concluded Mr. Copp could learn and remember simple instructions but might have difficulty carrying them out on a sustained basis; could deal with patient and understanding coworkers; and may have difficulty dealing with work stress and changes in a competitive work setting.

At a May 2013 hearing, medical expert Kristy Farnsworth, Ph.D., testified that Mr. Copp had diagnoses of bipolar disorder, anti-social personality disorder, and polysubstance dependence. She opined that Mr. Copp had moderate limitations in complex interactions and interacting with the public and coworkers. She further opined, however, that Mr. Copp had no limitations in handling simple instructions, maintaining attention for two-hour periods, making simple work-related decisions, or dealing with simple workplace changes. Dr. Farnsworth concluded Mr. Copp had no more than moderate mental limitations. A year later at a supplemental hearing, she arrived at the same conclusion.

Finally, at a July 2019 hearing, medical expert Michael Lace testified that Mr. Copp had diagnoses including bipolar disorder, depression, ADHD, personality disorder, and substance abuse disorders. He testified Mr. Copp had no more than moderate mental limitations, but that his work should be limited in the following ways:

6

only routine tasks, no fast-paced production lines, reduced interpersonal contact, and no access to alcohol, illegal drugs, or over-the-counter medications.

### C. Administrative Proceedings and District Court Judgment

In her October 2019 decision, the ALJ followed the Commissioner's five-step sequential evaluation process for evaluating disability claims. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step two that Mr. Copp had severe mental impairments, including bipolar disorder, personality disorders, polysubstance dependence, and amphetamine dependence. The ALJ then found at step three that, taking drug and alcohol abuse ("DAA") into account, Mr. Copp is disabled because his mental impairments met two listings.

As required by 42 U.S.C. § 423(d)(2)(C), the ALJ then evaluated whether Mr. Copp's DAA was material to the finding of disability (*i.e.*, whether Mr. Copp would still be disabled in the absence of DAA). The ALJ concluded that without DAA, Mr. Copp would no longer have marked limitations in concentration, persistence, or pace and therefore would no longer meet any listings for mental impairments. The ALJ then assessed Mr. Copp's residual functional capacity ("RFC") and found that Mr. Copp had the RFC to do unskilled work in the national economy in the absence of DAA. The ALJ therefore concluded that he was not disabled.

Mr. Copp petitioned for review in the district court, contending the ALJ lacked substantial evidence to support her conclusion that DAA was material to the finding of disability. The district court rejected Mr. Copp's argument and affirmed.

## II. Discussion

The issue in this case is whether the ALJ erred in concluding that Mr. Copp's DAA was material to the finding of disability. Mr. Copp contends that conclusion is not supported by substantial evidence. We disagree.

We review the ALJ's decision to determine whether substantial evidence in the record as a whole supports the ALJ's decision and whether the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This "threshold . . . is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). We may neither reweigh evidence nor substitute our judgment for the Commissioner's. *Hendron*, 767 F.3d at 954.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "A drug or alcohol addiction is a contributing factor if the claimant's remaining limitations would not be disabling in the absence of drugs or alcohol." *Grogan v. Barnhart*, 399 F.3d 1257, 1264 (10th Cir. 2005). The key issue, in other words, is whether a

claimant would still be found disabled if they stopped using substances. 20 C.F.R. §§ 404.1535(b)(1).[3]

In a Social Security Ruling (SSR), the Commissioner provided additional guidance on how to determine whether a claimant would still be disabled in the absence of DAA. *See* SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013). Although "social security rulings do not carry the force and effect of law[,] [t]hey are entitled to deference . . . because they constitute Social Security Administration interpretations of its own regulations and the statute which it administers." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (citation and internal quotation marks omitted). Relevant to this case, SSR 13-2P states that "[a]djudicators may draw inferences" from the claimant's periods of abstinence from drugs and alcohol, depending on the length of the abstinence, how recently it occurred, and whether the severity of the co-occurring impairment or impairments increased after the abstinence ended. 2013 WL 621536, at *12, § 9(b). This is consistent with our observation that DAA is a contributing factor if the claimant would not be disabled absent DAA. *Grogan*, 399 F.3d at 1264.

---

[3] The statute does not specify who bears the burden of proof on DAA materiality, but Social Security Ruling 13-2P states that "the claimant continues to have the burden of proving disability throughout the DAA materiality analysis." SSR 13-2P, 2013 WL 621536, at *4, § 5(a) (Feb. 20, 2013). Other circuits that have expressly considered this question agree that the claimant bears this burden. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (listing cases). We need not decide this question here, however, because we would affirm regardless of which party bore the burden.

SSR 13-2P further cautions, however, that "[i]mprovement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use." 2013 WL 621536, at *12, § 9(d)(i). Thus, evidence is needed "from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved . . . with abstinence." *Id.* at *13, § 9(d)(iii). Again, this is consistent with our case law. For example, in *McGoffin v. Barnhart*, 288 F.3d 1248 (10th Cir. 2002), we rejected an ALJ's reliance on an assessment of the claimant that occurred during a six-week period of sobriety at a rehabilitation facility, because "she was in a structured environment there, highly medicated, and in intensive therapy, factors that also presumably contributed to her alleged improved condition." *Id.* at 1253.

In this case, the ALJ identified a four-month period of abstinence that began with Mr. Copp's arrest in April 2015. After four months in jail with no medication and no access to drugs or alcohol, Mr. Copp was hospitalized at a mental health facility for eight days in order to be evaluated for his competency to stand trial. During his evaluation, he reported that he "has been without suicidal ideation or any significant emotional or cognitive difficulties." Aplt. App. vol. 10 at 2219. The examining physician observed that Mr. Copp was "behaviorally, emotionally and cognitively appropriate" and "demonstrated no signs or symptoms of mental illness

10

or of cognitive impairments," despite not having been prescribed psychotropic medications for four months. *Id.* The physician further observed:

> [Mr. Copp's] speech is of normal rate and volume and is clearly understandable. His mood upon admission and throughout his stay was "good" and his affect or observable range of emotional expression was euthymic or within normal range. Mr. Copp's thought processes during his hospitalization were consistently logical, linear and goal oriented. His thought content has been consistently negative for any auditory or visual hallucinations and he denied any thoughts or plans of harming himself or others either actively or passively. At no time has he expressed any bizarre, paranoid, or delusional beliefs, thoughts or ideas.

*Id.* at 2219-20. These observations, along with the abundant evidence of Mr. Copp's history of substance abuse, were "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion," *Richardson*, 402 U.S. at 401 (internal quotation marks omitted).

Mr. Copp nonetheless argues the ALJ erred in relying on the 2015 evaluation. He contends that because "the mental health facility was a highly structured environment," the period of abstinence "does not reveal anything about how [he] would behave outside of that structure." Aplt. Opening Br. at 14. In support, he cites *Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006). That case, however, is distinguishable. In *Salazar*, the court observed that after the claimant's forty days of sobriety, the record actually showed that "her mental problems alone were so severe that she needed to be hospitalized." *Id.* at 624. "[I]t was after five days *in a structured environment and receiving antipsychotic medication* that her outlook improved." *Id.* (emphasis added). By contrast, Mr. Copp's period of sobriety was more than four months, the vast majority of which was not in a hospital, and he

received no medications during that entire period.[4] And Mr. Copp was transferred to a hospital after four months of abstinence in jail not because of mental problems but to be evaluated for his competence to stand trial—the result of which was that the examining physician concluded Mr. Copp "demonstrated no signs or symptoms of mental illness or of cognitive impairments." Aplt. App. vol. 10 at 2219.

Mr. Copp also argues the ALJ's decision is not supported by substantial evidence because no medical consultant found DAA was material to his disability. He faults the ALJ, for example, for failing to ask a medical expert whether DAA contributed materially to Mr. Copp's mental impairments. The question of DAA materiality, however, is "reserved to the Commissioner." SSR 13-2P, 2013 WL 21536, at *8, § 6(c)(ii), n.19; *see also* 20 C.F.R. § 404.1527(d) (issues that are dispositive of a case are reserved to the Commissioner). Therefore, SSR 13-2P directs that ALJs "will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether DAA is material." SSR 13-2P, 2013 WL 621536, at *8, § 6(c)(ii), n.19. Indeed, given the lack of "any research data that . . . can [be] use[d] to predict reliably" whether a claimant's mental impairments would improve in the absence of DAA, *id.* at *9, § 7(a), the Commissioner directs ALJs "not [to] ask [medical experts] for projections," *id.* at *8, § 6(c)(ii), n.19.

---

[4] Relatedly, Mr. Copp argues there is no evidence he was on drugs or alcohol in the period immediately preceding his arrest. To the contrary, the record reflects that the incident giving rise to his arrest in April 2015 was precipitated by his combining alcohol with Xanax, Ambien, Adderall, and Percocet.

SSR 13-2P replaced guidance the Social Security Administration (SSA) had issued in a teletype emergency message in 1996. *See* Office of Disability, SSA, "*Questions and Answers Concerning DAA from the 07/02/96 Teleconference—Medical Adjudicators, EM-96200* (Aug. 30, 1996) ("the Teletype"), https://www.masslegalservices.org/system/files/library/daa-qa.htm. Mr. Copp argues the Teletype mandates a finding that DAA is not material when a medical expert cannot project what limitations would remain if the claimant stopped using drugs and alcohol. *See id.*, ¶ 27. Mr. Copp waived that argument by failing to present it to the district court. *See FDIC v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999). In any case, the Teletype was rendered obsolete by SSR 13-2P, *see* SSR 13-2P, 2013 WL 621536, at *1, and the ALJ properly applied the rule applicable at the time of her decision.

Finally, Mr. Copp argues the ALJ's decision was not supported by substantial evidence because some medical consultants "stated that DAA was *not* material." Aplt. Opening Br. at 11. This argument misinterprets what the consultants said. For example, one of the medical experts the SSA hired, Dr. Farnsworth reviewed the medical records and opined that "DAA is not an issue." Aplt. App. vol. 5 at 923. But Dr. Farnsworth was not opining about DAA materiality within the meaning of 42 U.S.C. § 423(d)(2)(C)—which, in any event, is a matter reserved to the Commissioner. Rather, the record makes clear that Dr. Farnsworth concluded DAA was *irrelevant* because even taking DAA into consideration, Mr. Copp was only moderately impaired. *See* Aplt. App. vol. 1 at 136-37. The same was true of other consultants. *E.g.*, *id.* at 199, 203-05, 207 (concluding mental impairments

and drug abuse issues were not disabling and therefore "DAA material determination is not required").

### III.  Conclusion

For the foregoing reasons, the judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge